UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT GILDING, JR., | No. 2:18-cv-02459 CKD |
| Plaintiff, | |
| v. | ORDER & |
| ANDREW SAUL, Commissioner of Social Security, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the undersigned will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1959, applied on December 9, 2014 for disability and disability benefits under Title II, alleging disability beginning July 23, 2014. Administrative Transcript ("AT") 11, 18, 189-195. Plaintiff alleged he was unable to work due to anxiety disorder. AT 218. In a

////

////

1

decision dated July 18, 2017, the ALJ determined that plaintiff was not disabled.[1] AT 11-20.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since July 23, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: Depression, anxiety, and asthma.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

| | |
|---|---|
| 1 | finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He is not able to work at unprotected heights. He must avoid concentrated exposure to dust, gases, chemicals, pulmonary irritants, etc. Mentally, he can perform simple repetitive tasks with no public interaction. He can occasionally have noncollaborative interactions with co-workers. |

      6. The claimant is unable to perform any past relevant work.

      7. The claimant was born on XX/XX/1959 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date.

      8. The claimant has at least a high-school education and is able to communicate in English.

      9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

      10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

AT 13-19.

ISSUES PRESENTED

      Plaintiff argues that the ALJ committed the following error in finding plaintiff not disabled: The ALJ's finding that plaintiff had the mental RFC to perform simple repetitive tasks with specified limitations in interacting with others, is not supported by substantial evidence.

LEGAL STANDARDS

      The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

3

ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Before turning to plaintiff's claim, the undersigned notes the following background facts:

Plaintiff was 55 years old on his alleged disability onset date in July 2014. He had an associate's degree in computer science and had worked as a computer technical support analyst, auto parts salesperson, and sales route driver, and was employed at various times by Earthlink, Verizon Wireless, and O'Reilly Auto Parts. AT 18, 43-48. Plaintiff testified that he was let go from his job at Verizon Wireless in 2014 because he was having trouble focusing, recalling information, and assisting customers. AT 48. When the ALJ asked about a work attendance problem noted in the record, plaintiff testified that he had taken some time off from the job relating to depression and anxiety. AT 48-49.

The ALJ found plaintiff to have the moderate mental limitations, reasoning as follows:

> In understanding, remembering, or applying information, the claimant has moderate limitations. . . . He was let go from his job at Verizon because he had trouble doing the job, and he was taking time off due to depression (Testimony).
>
> In interacting with others, the claimant has moderate limitations. . . . The claimant testified that he was let go from Verizon because he had trouble assisting customers. He now shops at night to avoid people [record citation].

4

> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitations. . . . On December 22, 2014, an impartial SSA representative spoke to the claimant by telephone to review his disability application. The claimant was able to answer all questions and confirm everything. He had no difficulty understanding, concentrating, or answering [record citation]. The claimant testified that he was let go from his job at Verizon because he had trouble focusing. He is not able to focus. He loses track of what he is doing and forgets what he is saying. It takes a while for him to get back together (Testimony).
>
> As for adapting or managing oneself, the claimant has experienced moderate limitations. . . . The claimant's record shows that he exhibited no problems interacting with his medical providers and the consultative examiners [record citations].

AT 14.

The ALJ summarized the medical evidence and plaintiff's subjective symptoms[2] as follows:

> The claimant testified that he has anxiety and panic attacks. His Kaiser record shows that he has had long-term mental health treatment with psychotropic medications. In April of 2014, he was walking regularly. His depression had been stable. He reported that his delusions were resolved by July of 2014. He reported usually walking to work out his anxiety. [Record citations.]
>
> He appeared stable by 2015 with decreased frequency of mental health symptoms. . . . His mood appeared euthymic, much improved from prior appointments with congruent and reactive affect, and occasional smiles. [He had started on Wellbutrin.] His GAF scores were generally in the moderate to mild range. . . .
>
> . . . [In his February 2017 testimony], he reported that being around large groups of people trigger panic attacks. He has lesser attacks in which he gets nervous and feels stressed. His RFC was eroded accordingly for him to work mostly alone and with no public contact. He takes psychotropic medications and receives mental health therapy.

AT 16; see AT 55-56 (hearing testimony). The RFC limited plaintiff to "simple repetitive tasks

---

[2] Though the ALJ found the alleged intensity, persistence, and limiting effect of plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record," the mental RFC took plaintiff's statements into account. AT 16; see AT 17 ("the claimant's RFC is eroded in relation to his ability to interact with the public and work with co-workers based upon his testimony."); AT 18 ("The claimant's RFC has been eroded due to his mental symptoms[,]" including anxiety and panic around people, as described to a treatment provider in a May 2015 medical note).

5

with no public interaction" and "occasional[] . . . noncollaborative interactions with co-workers."

A. Medical Opinion

Plaintiff asserts that the ALJ gave insufficient reasons for rejecting the opinion of his treating psychiatrist, Dr. Rao, who began treating plaintiff in October 2014 and saw him four more times, ending in April 2015. AT 630-634, 685, 683, 681.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On April 6, 2015, Dr. Rao filled out a Mental Disorder Questionnaire Form as to plaintiff, stating in part: "[Patient] frequently forgets or misses appointments. . . . He stutters when speaking and seems nervous. . . . [Patient] feels sad all the time, tired, unmotivated. . . . He also is

'afraid to go outside' and feels 'apathetic about living.'" AT 675. Dr. Rao stated that plaintiff's "affect is blunted, suggesting severe pathology." AT 676. Dr. Rao further noted auditory hallucinations, isolating behavior, confusion, poor memory, and lack of motivation. AT 677. Dr. Rao opined that plaintiff's "memory has progressively worsened and he frequently cannot understand or remember simple instructions," citing missed lab and medical appointments. AT 678. She opined that his "worsening anxiety has made him unable to handle stress or change, unable to make simple decisions, unable to attend scheduled appointments or meetings." AT 678. She noted that plaintiff was starting a new antidepressant medication. AT 679. Dr. Rao diagnosed plaintiff with cognitive disorder, major depressive disorder, generalized anxiety disorder, and panic disorder with agoraphobia. AT 679. As to prognosis, Dr. Rao opined that plaintiff's condition was not expected to improve; rather, she predicted a "permanent decline in functioning." AT 679.

The ALJ gave Dr. Rao's April 2015 opinion little evidentiary weight, citing the following reasons:

> This opinion is not consistent with the medical evidence of improvement in the claimant's mental condition. Dr. Rao has only been treating the claimant for about 7 months. This opinion conflicts with Dr. Tate's thorough psychological evaluation. The claimant's mental symptoms appear improved over time and he has generally moderate to mild symptoms. He was able to participate fully in the hearing and exhibited no mental symptoms.

AT 17 (record citations omitted).

In contrast, the ALJ gave great weight to the opinion of consultative examiner Dr. Lenore Tate, who performed a comprehensive mental evaluation of plaintiff in March 2015. AT 645-651. Dr. Tate's opinion noted plaintiff's chief mental complaints, which were roughly the same subjective symptoms Dr. Rao described in the above report, one month later: dark thoughts and voices, avoidance of people, and anxiety. AT 646. Dr. Tate's report stated that plaintiff "was able to volunteer information spontaneously" and "did not appear to be experiencing any psychomotor agitation or retardation." AT 648. His thought process was "coherent and organized and there was no tangentiality or loosening of associations." AT 648. His thought content was "relevant and non-delusional," and he was "pleasant during the evaluation," though

7

his mood was mildly anxious and depressed. AT 648. His "speech was normal and clearly articulated" with no stammering, and he was "alert and oriented to person, place, time, and purpose." AT 649. He was "able to follow our conversation well," Dr. Tate noted, and his symptom severity was in the mild range." AT 650. In her functional assessment, Dr. Tate opined that plaintiff was mildly impaired in the following abilities: performing detailed and complex tasks; relating and interacting with coworkers and the public; accepting instructions; performing work activities without special instruction; maintaining regular attendance; and maintaining concentration, attention, persistence, and pace. AT 650-651. The ALJ concluded that Dr. Tate's opinion was "supported with relevant evidence and is consistent with the record as a whole"; however, based on plaintiff's testimony, the ALJ found plaintiff's ability to interact with others more limited than Dr. Tate found. AT 17.

The ALJ also gave great weight to the opinions two State agency psychological consultants, Dr. Mateus and Dr. Stern. AT 18; see AT 78-95, 105. In May 2015, Dr. Mateus reviewed plaintiff's medical history and noted that his antidepressant and anxiety medication "appears to have resolved some of his problems. He appears to be very functional when seen [by Dr. Tate], his [activities of daily living] appear to be intact. He should be able to sustain at least simple tasks with minimal contact with people." AT 89. In August 2015, Dr. Stern reviewed plaintiff's records, noting that he had "severe anxiety" in late 2014, but had no history of serious mental health treatment before 2013. AT 106. Dr. Stern opined that plaintiff's current medication seemed to be working, noting Dr. Tate's report and a May 2015 medical record in which plaintiff described his depression as "stable on current meds," though he continued to have anxiety. AT 105; see 690-692.[3] The ALJ found that these opinions were "consistent with the medical evidence," though plaintiff's mental RFC was "eroded due to his mental symptoms." AT 18.

---

[3] At this May 27, 2015 medical visit, psychiatrist Dr. Joseph Auza assessed plaintiff with a GAF score of 51-60, indicating moderate symptoms. Dr. Auza's mental status exam findings noted that plaintiff's manner was "pleasant and cooperative" and his behavior, speech, language, thought processes, and orientation were all normal, while his mood was "ok." However, plaintiff's affect was "restricted," and he reported trouble sustaining focus and concentration. AT 691.

The ALJ also gave some weight to "the SSA representatives/interviewers because they are professional observers. On December 22, 2014, an SSA representative spoke to the claimant by telephone to review his disability application. The representative observed that the claimant was able to answer all questions and confirm everything. He had no difficulty understanding, concentrating, or answering." AT 18; see AT 215.

Turning back to Dr. Rao's opinion, at issue here, the ALJ cited her relatively short time treating plaintiff (seven months)[4], the conflict with Dr. Tate's evaluation during roughly the same period, and medical evidence of improvement. All three reasons have record support; like the ALJ, both State agency physicians concluded that plaintiff's overall medical history showed that his mental symptoms had improved with medication. See, e.g., AT 681 (April 2015: after four weeks on antidepressant, plaintiff's mood was "much improved," along with memory, motivation, and concentration), 2614-2615 (October 2015: plaintiff assessed as "improving" with "better" mood and "brighter/upbeat" affect). While plaintiff's mental condition was somewhat variable over time, the overall trajectory can reasonably be read as improving with treatment and medication. See Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). In contrast, Dr. Rao opined that plaintiff was not likely to improve but faced a "permanent decline in functioning."

The ALJ also permissibly cited plaintiff's full participation in the hearing, with no observable mental symptoms, as a reason to discount the severity of Dr. Rao's assessment. See Morgan v. Comm'r of Soc. Sec. Admin, 169 F.3d 595, 602-603 (9th Cir. 1999) (ALJ permissibly rejected treating and examining doctors' opinions based on specific evidence, his personal observations, and the opinion of the nontreating, nonexamining medical adviser). It was also permissible for the ALJ to consider plaintiff's history of normal interactions with medical providers, consultative examiners, and the SSA representative.

---

[4] The length of Dr. Rao's treating relationship with plaintiff was a valid consideration in weighing her opinion. See 20 C.F.R. § 404.1527(c)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source."). While Dr. Rao was clearly a treating source, her knowledge of plaintiff's condition was of relatively short duration, consisting of five visits in seven months.

1    In sum, the ALJ provided specific and legitimate reasons for discounting Dr. Rao's

opinion, supported by substantial record evidence referenced in the body of the decision. The

undersigned finds no error on this basis.

B. GAF Scores

Plaintiff next argues that the ALJ erroneously discounted plaintiff's GAF scores, which the

decision described as "generally in the moderate to mild range." AT 16. The ALJ weighed this

evidence as follows:

> I have considered the GAF scores of record[:] 60, 41-50, 49.[5] I find these GAF scores in the record are of limited evidentiary value. These subjectively assessed scores reveal only snapshots of impaired and improved behavior. I give more weight to the objective details and chronology of record, which more accurately describe the claimant's impairments and limitations.

AT 18 (record citations omitted).

GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). Id. A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. Id.

////

---

[5] During the relevant period of July 2014 through July 2017, plaintiff was assessed with the following GAF scores: 61-70 (July 2014); 60 (October 2014); 60 (December 2014); 41 (February 2015); 41 (March 2015); 49 (April 2015); 51-60 (May 2015); 51-60 (September 2015); 51-60 (October 2015); 51-60 (December 2015); 51-60 (January 2016). AT 294, 634, 630, 685, 683, 682, 691, 2606, 2615, 2623, 2632.

"The Social Security Administration has said that GAF scores 'should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source." Wellington v. Berryhill, 2017 878 F.3d 867, 869, n.1 (9th Cir. 2017), citing AM-13066 REV. Plaintiff argues that the decision "gives no reason for finding the 'serious' GAFs in this record of 'limited evidentiary value'" and that the reasons stated are inadequate. Dr. Rao assessed plaintiff with GAF scores of 41 and 49 (serious symptoms or serious impairment) in March and April of 2015, respectively. However, most of plaintiff's scores over a three-year period were in the mild or moderate range. The ALJ properly considered these scores along with other objective evidence, and there was no requirement that he factor the lowest GAF scores into the RFC to arrive at a more limited mental capability than assessed from the medical opinions and overall record. More generally, plaintiff has not shown why his impairments warranted greater limitations than an RFC for simple repetitive tasks with no public interaction and occasional, noncollaborative interactions with co-workers.

The undersigned concludes that the mental RFC is supported by substantial evidence.

CONCLUSION

IT IS HEREBY ORDERED that the Clerk of Court shall assign a district judge to this action.

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

11

within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 26, 2019

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/gilding2459.ss.ckd_f&rs